NOT FOR PUBLICATION (Doc. No. 1)

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

|  |  |
|---|---|
| KARYN ST. JOHN, :<br>:<br>Plaintiff, :<br>:<br>v. :<br>:<br>ACTING COMMISSIONER OF SOCIAL :<br>SECURITY, :<br>:<br>Defendant. : | Civil No. 15-8831 (RBK)<br><br>**OPINION** |

**Kugler**, United States District Judge:

This matter comes before the Court upon the appeal of Karyn St. John ("Plaintiff") for review of the final determination by the Commissioner of Social Security ("Commissioner"). The Commissioner denied Ms. St. John's application for Child's Supplemental Security Income ("SSI") benefits under Title XVI of the Social Security Act. For the reasons set forth below, the Commissioner's decision is **AFFIRMED**.

**I. BACKGROUND**

On June 14, 2012, Plaintiff protectively filed for Child's SSI under Title XVI of the Social Security Act on behalf of her son ("D.A."). Administrative Record ("Rec."), Ex. 1D 139-48 (Doc. No. 4-5). D.A. was born on October 3, 2011 at Virtua Hospital in Voorhees, New Jersey. Rec., Ex. 1F 197 (Doc. No. 4-7). Plaintiff's SSI application alleged that D.A. had a qualifying disability, hemophilia, which began on October 3, 2011. Rec., Ex. 1A 73 (Doc. No. 4-3). Plaintiff's claim was initially denied on July 24, 2012. Rec., Ex. 2A 80. Plaintiff's request for

reconsideration was denied on October 11, 2012. Rec., Ex. 3A 81. Plaintiff then filed a request for an administrative hearing on December 10, 2012. Rec., Ex. 7B 104-06 (Doc. No. 4-4). On March 20, 2014, the administrative law judge ("ALJ")'s found that D.A. was not disabled under the meaning of the Social Security Act. Rec., 35-54 (Doc. No. 4-2). The Appeals Council denied Plaintiff's request for review on October 20, 2015. Rec., 1-6. Plaintiff filed the instant complaint on December 23, 2015. *See* Compl. (Doc. No. 1).

The ALJ applied the three-step sequential evaluation process codified in 20 C.F.R. § 416.924(a) to determine whether D.A., a minor, was disabled under § 1614(a)(3)(C) of the Social Security Act. Rec. 36. This three-step process determines whether the disability is functionally equivalent to the listings provided by the Social Security Act. *See* 20 C.F.R. § 416.924(a). The first step of the evaluation process is determining whether the claimant is engaging in substantial gainful activity. *Id.* If so, the claimant will not be deemed disabled regardless of claimant's medical condition, age, education, or work experience. 20 C.F.R. § 416.924(b). The second step of the evaluation process is to determine whether the claimant has a medically determinable impairment that is severe. 20 C.F.R. § 416.924(c). The third and final step of the evaluation process is to determine whether the impairment meets, is medically equal, or is functionally equal to the listings. 20 C.F.R. § 416.924(d).

At step one, the ALJ found that the claimant, D.A., was a minor and had never engaged in substantial gainful activity, satisfying step one. Rec. 38. At step two, the ALJ determined that D.A.'s hemophilia was both "medically determinable" and "severe." *Id.* An impairment is considered medically determinable if resulting "from anatomical, physiological, and/or psychological abnormalities established by clinical and laboratory diagnostic techniques generally accepted in the medical community." *Id.* The ALJ determined this to be the case with

2

D.A.'s hemophilia. *Id.* To be deemed severe, section 1614(a)(3)(C) of the Social Security Act requires that an impairment lasts or is expected to last at least 12 months. 42 U.S.C. § 1382c(a)(3)(C)(i) (2004). The ALJ determined D.A.'s impairment was severe within the Social Security Act's definition. Rec. 38. Thus, D.A.'s impairment satisfied step two of the evaluation process.

However, at step three, the ALJ found that D.A.'s hemophilia did not meet or medically equal Listing 107.08. *Id.* at 39. The ALJ found no medical evidence of "[r]epeated spontaneous or inappropriate bleeding" or "[h]ermarthorosis with joint deformity," which are required to meet or medically equal Listing 107.08. *Id.* Furthermore, the ALJ found that D.A. did not have an impairment or combination of impairments that functionally equaled Listing 107.08. *Id.* For a claimant to have a disability that functionally equals the Listing, the impairment must result in marked limitations in two domains of functioning or an extreme limitation in one domain. 20 C.F.R. § 416.926a(d). The domains of functioning are: "acquiring and using information; attending and completing tasks; interacting and relating with others; moving about and manipulating objects; caring for [oneself]; and health and physical well-being." 20 C.F.R. § 416.926a(b)(1). In making this determination, the ALJ allegedly considered all of the relevant evidence, including "objective medical evidence and other relevant evidence from medical sources; information from other sources, such as school teachers, family members, or friends." Rec. 39.

The ALJ found that only the functional domains of "caring for [oneself]" and "health and physical well-being" were impacted in a substantive way by D.A.'s hemophilia. *Id.* at 50-53. In regards to "caring for [oneself]," the ALJ considered "how well [D.A.] maintains a healthy emotional and physical state." *Id.* at 50. The ALJ determined that D.A.'s "ability to care for

3

himself at his age is compromised by his hemophilia" as displayed by his need for protective equipment and heightened sensitivity to scrapes and bruises. *Id.* at 52. However, the ALJ found that despite "the potential for the claimant to require treatment in the hospital when he falls or injures himself," D.A. had only needed to be sent to the hospital twice and treated with Advate, an anti-hemophilic factor used to treat hemophilia, once. *Id.* Thus, the ALJ found that D.A. had "less than marked limitation in his ability to care for himself." *Id.*

When considering the domain of "health and physical well-being," the ALJ took into consideration "the cumulative physical effects of physical and mental impairments and any associated treatments or therapies on a child's health and functioning that were not considered in the evaluation of the child's ability to move about and manipulate objects." *Id.* The ALJ concluded that D.A. had "less than marked limitation in health and physical well-being." *Id.* at 53. This conclusion again was based on the fact that "the claimant has only undergone two episodes of treatment in the emergency room for potential or actual bleeding episodes and only one of the episodes required the administration of Advate." *Id.* at 53. The ALJ held that despite D.A.'s need to use kneepads and helmet for his protection, "there is no indication in the objective evidence that these protective devices interfered with any of the domains . . . other than the domain of caring for himself." *Id.*

Since D.A. was found not to have two marked limitations or one severe limitation in any of the domains, D.A.'s hemophilia was not functionally equivalent to the listing. *See* 20 C.F.R. § 416.926a(d). Accordingly, the ALJ held that D.A.'s hemophilia did not medically or functionally equal Listing 107.08 and, therefore, D.A. was not disabled per the Social Security Act's definition. *Id.* at 54.

4

## II. STANDARD OF REVIEW

When reviewing the Commissioner's final decision, this Court is limited to determining whether the decision was supported by substantial evidence, after reviewing the administrative record as a whole. *Zirnsak v. Colvin*, 777 F.3d 607, 610 (3rd Cir. 2014) (citing 42 U.S.C. § 405(g)). Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Morales v. Apfel*, 225 F.3d 310, 316 (3d Cir. 2000). The oft-used description for this standard is that substantial evidence is "more than a mere scintilla but may be somewhat less that a preponderance of the evidence." *See, e.g., Rutherford v. Barnhart*, 399 F.3d 546, 552 (3d Cir. 2005) (citation omitted). Courts may not set aside the Commissioner's decision if it is supported by substantial evidence, even if this court "would have decided the factual inquiry differently." *Fargnoli v. Massanari*, 247 F.3d 34, 38 (3d Cir. 2001) (citing *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999)).

Upon review, this Court must be wary of treating the determination of substantial evidence as a "self-executing formula for adjudication." *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983). This Court must set aside the Commissioner's decision if they did not take into account the entire record or failed to resolve an evidentiary conflict. *Schonewolf v. Callahan*, 972 F. Supp. 277, 284-85 (D.N.J. 1997) (citing *Gober v. Matthews*, 574 F.2d 772, 776 (3d Cir. 1978)). Evidence is not substantial if "it really constitutes not evidence but mere conclusions," or if the ALJ "ignores, or fails to resolve, a conflict created by countervailing evidence." *Wallace v. Sec'y of Health & Human Servs.*, 722 F.2d 1150, 1153 (3d Cir. 1983) (citing *Kent*, 710 F.3d at 114).

**III. DISCUSSION**

The ALJ determined that D.A. was not disabled within the meaning of the Social Security Act at any point during the relevant time period. Therefore, the ALJ held that Plaintiff, who filed on behalf of D.A., is not entitled to SSI benefits. Plaintiff now asserts: (1) the ALJ's finding of only one episode of spontaneous or inappropriate bleeding was against the weight of the evidence of record; (2) the ALJ erred in counting only episodes of frank bleeding when analyzing whether claimant suffered from repeated episodes of spontaneous or inappropriate bleeding; (3) the ALJ erred in counting only incidents requiring hospital intervention when analyzing whether claimant suffered from repeated episodes of spontaneous or inappropriate bleeding; and (4) the appeals council erred in limiting the statement of the treating hematologist that the claimant suffered from repeated episodes of inappropriate bleeding to the date the statement was issued, as opposed to the entire course of treatment since claimant's birth. Pl.'s Br. at 1.

**A. ALJ's Finding That D.A.'s Impairment Did Not Meet or Medically Equal Listing 107.08.**

Plaintiff's first three arguments are all "essentially iterations of the same argument, i.e., the ALJ erred in finding that Plaintiff's impairment did not meet or medically equal Listing 107.08." Def.'s Br. at 6 n.1. Thus, the first three arguments can be consolidated into reviewing whether the ALJ's finding that D.A.'s impairment did not meet or medically equal Listing 107.08 was based on substantial evidence. The ALJ's conclusion that D.A.'s impairment did not medically equal Listing 107.08 was allegedly supported by substantial medical expert opinion stating D.A.'s impairment did not constitute "repeated spontaneous or inappropriate bleeding." Rec. 41-42. However, Plaintiff argues that testimony from D.A.'s grandmother proves D.A.'s impairment medically equals Listing 107.08. Pl.'s Br. at 4-6, 9. Though the ALJ considered the

6

testimony, he simply "found no evidence of spontaneous or inappropriate bleeding in the medical record as a whole occurring on a repeated basis." Rec. 39. Instead, the ALJ found that "the medical record reflects that the claimant . . . has not established repeated episodes." *Id.* In this case, the ALJ considered the testimony of D.A.'s grandmother, but he could not reconcile the testimony with the medical records. Rec. 39. Accordingly, the ALJ's decision that D.A.'s impairment did not medically equal Listing 107.08 was supported by substantial evidence and his decision should be affirmed. *See Zirnsak*, 777 F.3d at 610.

      The ALJ then considered whether D.A.'s impairment functionally equaled Listing 107.08. In this inquiry, the ALJ considered the possible effect D.A.'s impairment would have in all six of the functional domains. Rec. 42-53. The ALJ conducted an inquiry regarding each of these domains and concluded that D.A.'s impairment would only impact the domains of "caring for [oneself]" and "health and physical well-being." *Id.* at 50-53. In the ALJ's inquiry into the effect D.A.'s hemophilia has on caring for himself, they considered the observations of a doctor, D.A.'s mother, and D.A.'s grandmother. *Id.* at 52. The ALJ also considered the potential harm that D.A.'s hemophilia could cause and the medical attention D.A. actually received for his hemophilia. *Id.* After weighing all the evidence, the ALJ concluded that D.A.'s hemophilia caused D.A. "a less than marked limitation in his ability to care for himself." *Id.* This Court's review of the ALJ's decision is limited to whether the decision was supported by substantial evidence. *See Zirnsak*, 777 F.3d at 610. Plaintiff does not argue that the ALJ rejected evidence for an incorrect reason. The Court finds that the ALJ laid out his reasoning for concluding D.A.'s hemophilia was not a marked limitation to D.A.'s ability to take care of himself. Therefore, this Court affirms the ALJ's conclusion that D.A.'s hemophilia did not cause a marked limitation in the functional domain of taking care of himself.

When determining that D.A.'s hemophilia did not cause a marked limitation to D.A.'s health and physical well-being, the ALJ considered all the pertinent evidence in making his decision. In considering all the evidence, the ALJ gave great weight to the statements of doctors who examined and treated D.A. Rec. 53. These statements showed that, other than the hemophilia, D.A. was quite healthy and "did not have a sickly appearance and did not appear ill." *Id.* The ALJ also considered the two instances that D.A. required hospitalization for injuries relating to his hemophilia, including the sole trip which required the administration of Advate. *Id.* The ALJ determined that the two trips to the hospital could not outweigh the majority of the evidence that stated D.A.'s hemophilia was not a marked limitation to his health and physical well-being. *Id.* There is no evidence in the record or provided by Plaintiff that shows the ALJ did not take all necessary evidence into his consideration. While Plaintiff might disagree with the ALJ's conclusion, this Court is only reviewing the issue of whether the ALJ considered the pertinent evidence and his conclusion was supported by substantial evidence. *See Zirnsak*, 777 F.3d at 610. Because the ALJ's conclusion was supported by substantial evidence, this Court affirms the ALJ's conclusion regarding D.A.'s less than marked limitation in the functional domain of health and well-being.

Because the ALJ's conclusions regarding the impact of D.A.'s hemophilia on the six functional equivalence domains were supported by substantial evidence, the Court affirms these conclusions. Since D.A.'s impairment does not "result in either 'marked' limitations in two domains of functioning or [an] 'extreme' limitation in one domain of functioning," his impairment does not functionally equal Listing 107.08. Rec. 53. The Court earlier affirmed the ALJ's conclusion that D.A.'s impairment does not medically equal Listing 107.08. Therefore,

the ALJ's final conclusion that D.A. is not disabled under § 1614(a)(3)(C) of the Social Security Act is affirmed.

### B. Appeals Council's Decision To Limit The Statement of Treating Hematologist

Plaintiff also contends that the Appeals Council erred in limiting the statement of Ms. Kaufman, a treating hematologist. Pl.'s Br. at 11. Plaintiff argues that remanding the case to the ALJ for consideration of this statement would be appropriate to clear up any confusion over the scope of Kaufman's statement. *Id.* at 12.

This Court cannot overturn a decision by the ALJ based on evidence never presented to the ALJ, nor is there "statutory authority . . . [which] authorizes the court to review the Appeals Council decision to deny review." *Matthews v. Apfel*, 239 F.3d 589, 594 (3d Cir. 2001). However, the Court may remand a case back to the ALJ if new evidence is "material and if there was good cause why it was not previously presented to the ALJ." *Id.* at 593; *see also* 42 U.S.C. § 405(g). Furthermore, submission of new evidence does not require the Appeals Council to grant review, even if the evidence is material. *Id.* at 592. The Appeals Council will only grant review if the ALJ's decision "is contrary to the weight of evidence currently of record." 20 C.F.R. § 416.1470(b).

The Court finds that the evidence submitted to the Appeals Council is immaterial. The Third Circuit has explained that new evidence is "material" if there is "a reasonable possibility that the new evidence would have changed the outcome of the Secretary's decision." *Newhouse v. Heckler*, 753 F.2d 283, 287 (3d Cir. 1985) (citation omitted). Ms. Kaufman, the hematologist whose statement was limited by the Appeals Council, was asked to answer "[w]hether the claimant suffered from hemophilia confirmed by laboratory" and "[w]hether the claimant suffered from repeated spontaneous or inappropriate bleeding." Pl.'s Br. at 11. The first answer

9

is duplicative, as multiple other medical experts confirmed this fact and the ALJ acknowledged D.A.'s condition. Rec. 38. Therefore, the first statement holds no probative value and would not have changed the ALJ's decision. *Matthews*, 239 F.3d at 593.

The second statement, while relevant, is inconsistent with the medical evidence on record as the ALJ observed. Ms. Kaufman stated that D.A. suffered from repeated spontaneous or inappropriate bleeding. Pl.'s Br. at 8. However, the ALJ found only two instances of D.A. requiring hospitalization for bleeding episodes while examining the record. Rec. 39. Thus, the ALJ concluded that the weight of the evidence showed that D.A. did not suffer from repeated spontaneous or inappropriate bleeding. *Id.* at 39. Ms. Kaufman's belief that D.A. suffered from repeated spontaneous or inappropriate bleeding went against the other medical experts' statements in the record. *Id.* at 41. Additionally, Ms. Kaufman, as a nurse practitioner, is not considered an acceptable "medical source." *See* 20 C.F.R. § 416.913(a) (explaining that the only acceptable medical sources are licensed physicians, licensed or certified psychologists, licensed optometrists, licensed podiatrists, and qualified speech-language pathologists). Thus, the ALJ likely would have placed more weight on the statements of acceptable medical sources which contradict Ms. Kaufman's conclusion.

Furthermore, while Ms. Kaufman found that D.A. had bruising, she also noted that he did not have joint pain or swelling. Rec. 276, 278-79. This is fairly consistent with other medical opinions the ALJ considered, making Ms. Kaufman's statement duplicative in this regard. *Id.* at 41-42. Ms. Kaufman's conclusion that D.A. suffered from repeated spontaneous or inappropriate bleeding goes against the conclusions of other medical experts, while the rest of her report simply corroborates other medical statements already in the record. The Court finds that nothing provided by Ms. Kaufman would have changed the ALJ's decision. Therefore, Ms. Kaufman's

statements are immaterial. Accordingly, the Court will not remand the case to the ALJ for consideration of this new information pursuant to section 405(g).

## IV.  CONCLUSION

For the reasons discussed above, the decision of the Commissioner is **AFFIRMED**.


Dated:  02/23/2017                                                                                   s/ Robert B. Kugler
                                                                             ROBERT B. KUGLER
                                                                             United States District Judge